J. W. EDMONDS (INDUSTRIAL BANK OF ELIZABETH CITY, ASSIGNEE), v. JOHN L. WOOD (MRS. MARY C. FAUTH, INTERVENER).

(Filed 14 October, 1942.)

**1. Partition §§ 1, 8: Judgments §§ 19, 20—**

A judgment lien upon the undivided interest of a tenant in common is subordinate to the right of the cotenants to enforce partition; and, when it is made, the judgment lien is transferred to the portion assigned to the debtor in severalty, or to his share in the proceeds of sale, even though the judgment creditor is not a party to the proceedings for partition.

**2. Partition §§ 2, 7, 8: Judgments §§ 19, 20—**

A judgment creditor is given the right upon his own initiative to have partition, so that the moiety, upon which the lien of his judgment attaches, may be ascertained, and no doubt he would be allowed to intervene in a partition proceeding, and diligence might require it. C. S., 3217.

**3. Partition § 4—**

Liens erroneously declared against judgment debtor's share, which injuriously affect the judgment creditor's general lien under C. S., 614, are irregularities, which can be corrected only by motion in the cause.

**4. Judgments § 4: Partition § 8—**

A judgment in partition proceedings cannot be collaterally attacked except for fraud or want of jurisdiction in the court, rendering it void.

**5. Judgments §§ 36, 41—**

Where judgment debtor borrows from a bank, giving for the debt a note, to which there were guarantors, and with the proceeds, by agreement with the bank, paid a large portion of it to his judgment creditor, and had the judgment assigned to the bank as collateral security for his loan, *held*, in effect, a satisfaction of the judgment.

APPEAL by Mrs. Mary C. Fauth, intervener, from *Clawson L. Williams, Judge,* at June Term, 1942, of PASQUOTANK. Reversed.

John L. Wood died intestate in 1913, seized of a lot in Elizabeth City, herein referred to as the Road Street property, consisting of a lot on which was located a brick building. He left as heirs at law four children, of whom Lloyd S. Wood died unmarried and intestate, and John L. Wood, Elizabeth Wood Rice, and Helen Wood Sawyer, survive. John L. Wood, Sr., also left surviving him his widow, Mary C. Wood—by subsequent marriage Mary C. Fauth—mother of the above named children and present intervener in this action. John L. Wood, Jr., is the defendant named in the action, judgment debtor therein, and petitioner in the partition proceeding hereinafter mentioned.

From the death of her husband, the widow remained in possession of and resided in the Road Street property, collected the rents and profits.

paid the taxes and assessments thereupon, and made valuable permanent repairs and improvements on the property; and meantime supported the wife and minor child of John L. Wood after their abandonment by the husband and father, and, prior to the abandonment supported Wood, and expended substantial sums of money for these purposes over a long period of time, applying to that purpose the rents and profits of the building, and her earnings as seamstress.

In July, 1938, John L. Wood brought a proceeding in the Superior Court to have the lands of his decedent father sold for partition, claiming a one-third interest therein. He joined in the petition his mother, as dowress, and asked that her dower be allotted to her. The petition further demands an accounting by her for rents and profits during her occupancy of the premises and for certain sums alleged to have been received by her for a small portion of the real estate sold. In her answer, in which Mrs. Rice and Mrs. Sawyer joined, Mrs. Fauth denied that she had received any sum for the sale of real estate out of which the petitioner had not received his proportional part; set up a claim for support of defendant's wife and infant daughter, abandoned by petitioner, alleged to be much in excess of his share of the rents and profits, and alleged the expenditure of large sums of money for taxes, street assessments for paving and sidewalks, and extensive repairs to the building in the nature of major improvements, which she alleged constituted a lien upon the property. Mrs. Rice and Mrs. Sawyer disclaimed any demand for rents and profits from the property.

The case was referred. The referee heard evidence and filed his report, charging Mrs. Fauth with the rents and profits during her occupancy, charging the petitioner with the support of his wife and child down to 1935, when Wood and his wife were divorced, and charging Wood's share with the proportionate part of the taxes, which had been paid by Mrs. Fauth for about twenty-six years, street assessments, and repairs made by Mrs. Fauth. Among those repairs was the installation or construction of an entire new brick front when the building was condemned. After apportioning one-third of the taxes and street assessments and the costs of the repairs before mentioned to Mrs. Fauth, and charging petitioner with only his proportionate part of these items, the referee found that the petitioner Wood was indebted to Mrs. Fauth in a balance of $2,425.57, which constituted a lien upon his share and should be paid to her out of the proceeds of his distributive share from the partition sale.

At October Term, 1940, of Pasquotank Superior Court, the referee's report was confirmed and judgment entered ordering a sale of the lands for partition. At this sale Mrs. Fauth became the last and highest bidder for the whole property at the price of $1,051, and the commissioners' deed has been executed, but not delivered.

The Edmonds Judgment:

Meanwhile, after the institution of the partition proceeding above described, J. W. Edmonds brought an action for recovery upon a note for $300 executed by Wood, and on 23 October, 1939, obtained judgment thereon by default. The judgment was docketed and cross indexed the same day. The judgment in the partition proceeding was not docketed and cross indexed until final judgment at the October Term, 1940.

It is noted in the findings of fact that Mrs. Fauth knew of the pendency of the case of "Edmonds *v.* Wood"; and that at the time of the purported assignment thereof, the Industrial Bank had actual knowledge of the pendency of the partitioning proceeding. In neither case was notice of *lis pendens* filed under the statute.

The Edmonds judgment was purportedly assigned to the Industrial Bank of Elizabeth City (subsequently joined as plaintiff upon Mrs. Fauth's intervention) under the following circumstances:

John L. Wood borrowed from the Industrial Bank of Elizabeth City, North Carolina, the sum of $650.00, said borrowing and lending having been on 14 February, 1940, and at said time the said Wood executed to said bank his promissory note in said amount. That as a part of said borrowing and lending it was agreed between the said Wood and the said bank that he was to use a portion of the proceeds of said borrowing to obtain an assignment of the judgment in the Edmonds case to the said Industrial Bank as security for the aforesaid note, and this was done, by paying the proceeds of the loan to Wood who paid to J. B. McMullan, Esq., some amount thereof upon execution of the assignment of judgment referred to below. The assignment was made by the attorney of record, J. B. McMullan, Esq., and no special authority appears in the record or findings of fact.

At the partition sale an attorney for the Industrial Bank appeared and gave notice that the bank claimed a prior lien upon the share of John L. Wood.

Execution was then issued upon the Edmonds judgment and at the execution sale, an attorney for Mrs. Fauth appeared and gave notice that she claimed a lien on the share of John L. Wood superior to that of the bank. The Industrial Bank became the last and highest bidder at the price of $200.

In order to protect her interest as far as possible and place herself in position to seek judicial relief, Mrs. Fauth made an upset bid and deposited the required 10% with the clerk of the court. She then asked to be allowed to intervene in the Edmonds case and have the execution recalled, seeking to have her lien in the partition proceeding declared superior to that of the Edmonds judgment, or that, failing this relief, she might be permitted to exonerate the property by paying off the

superior lien of the Edmonds judgment, if it should be held to be supe-
rior. The clerk of the Superior Court, being of opinion he was without
jurisdiction in the matter, declined the motion, and the movant appealed
to the judge.

By consent, the matter came on to be heard upon the motion, and
upon the merits, before Clawson L. Williams, Judge, at June Term,
1942. After making certain findings of fact, pertinent parts of which
are recited above, the judge held as a matter of law that the lien of the
Edmonds judgment was superior to any that the intervener may have
had under the judgment in the partitioning proceeding, and ordered the
sale under the execution to proceed under Mrs. Fauth's upset bid, inci-
dentally denying her prayer to be permitted to exonerate the property
by paying off the judgment.

From this judgment Mrs. Fauth, the intervener, appealed, assigning
error.

*J. Kenyon Wilson for intervener, appellant.*
*M. B. Simpson and John H. Hall for appellee.*

SEAWELL, J. 1. Was the judgment creditor Edmonds or his assignee,
the Industrial Bank, bound by the judgment in the partition proceeding
to which the judgment debtor John L. Wood was a party?

The jurisdiction of the court to entertain the partitioning proceeding
and proceed to judgment therein either by allotment of shares or by sale
for division of the proceeds has not been challenged. Therefore, the
question in so. far as is necessary for a decision of this case may be
answered by quotations from authorities which correctly state the law
as it obtains here and elsewhere:

"A judgment lien upon the undivided interest of a tenant in common
is subordinate to the right of the cotenants to enforce partition; and,
when it is made, the judgment lien is transferred to the portion assigned
to the debtor in severalty, or to his share in the proceeds of sale . . .

"If a sale of the undivided property is made for the purpose, the pur-
chaser takes his title freed and discharged from such subordinate encum-
brance on the share of the judgment debtor, and the creditor is remitted
to his debtor's share of the proceeds of the sale, even though the judgment
creditor is not a party to the proceedings for partition." Thompson on
Real Property (1940 Ed.), section 1989.

"In case of partition, the lien attaches to the specific land allotted to
the judgment debtor, or in case of sale for the purposes of partition, to
the fund obtained thereby." Tiffany, Real Property, sec. 1583.

"The interest of a debtor in land, though charged with the lien of a
judgment, may be subject to sale pursuant to the superior rights of

others as in case of property forming part of an estate or subject to partition. Under such circumstances, a judgment lien attaches to the proceeds to the extent of the debtor's interest therein or the surplus remaining after prior claims have been satisfied." Freeman on Judgments, 5th Ed., page 1981.

See, also, 40 Am. Jur., p. 110, sec. 130; 47 C. J., p. 617, sec. 940.

The judgment in the partitioning proceeding cannot be collaterally attacked except for fraud or want of jurisdiction in the court, rendering it void. Neither is suggested in the record. If, as appellees contend, liens were erroneously declared against the judgment debtor's share which injuriously affected the judgment creditor's general lien under C. S., 614—and this we do not decide—it would constitute a mere irregularity, which could be corrected only by a motion in that cause. Under C. S., 3217, the judgment creditor is given the right upon his own initiative to have partition so that the moiety upon which the lien of his judgment attaches may be ascertained. No doubt he would be allowed to intervene in a partitioning proceeding brought by a cotenant, his judgment debtor, and diligence might require it if his rights appeared to be imperiled. But upon sale of the land, the proceeds are actually or constructively in the custody of the court and execution is not available. Even though the money had not yet been paid into court, the judgment creditor cannot arrest the proceeding or prevent the consummation of the order by a simple resort to execution. Freeman on Judgments, op. cit. *supra.*

But the appellees are confronted with a more serious barrier growing out of the transaction through which the judgment debtor purportedly procured the transfer of the Edmonds judgment to the Industrial Bank.

The evidence discloses that Wood borrowed from the Industrial Bank $650.00, and made it a note in that amount, to which there were guarantors. He took the proceeds of the loan, and, by agreement with the bank, paid a large portion of it to Mr. McMullan, attorney of record in the Edmonds case, and had an assignment of the judgment made to the bank as collateral security for his loan.

The money was Wood's and he was still bound for it, and the agreement that he should buy in the judgment and have it assigned to the bank did not make it the money of the bank. This put the judgment debtor in the peculiar situation of attempting to capitalize on his own indebtedness.

We view this transaction and this payment by the judgment debtor as, in legal effect, satisfying the judgment. The execution should be withdrawn upon the motion of the intervener, and the judgment of the court below is, therefore,

Reversed.